IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

ANGELA FUELLING, Individually and )
as Personal Representative of the Estate of )
JAMES FUELLING, )
                                            )
              Plaintiff, )
                                            )
v. )
                                            )
PRATT INDUSTRIES, INC.; PRATT )
(JET CORR), INC.; PRATT LOGISTICS, )
LLC; ECHO GLOBAL LOGISTICS, INC; )
S&J LOGISTICS, LLC; AND JASON )
RICARDO GORDON )
                                            )
                                            )
              Defendants. )
_____ )

C/A No.: 7:22-cv-00905-HMH

**AMENDED COMPLAINT**

**(Jury Trial Demanded)**

        Plaintiff Angela Fuelling, individually and as Personal Representative of the Estate of

James Fuelling ("Plaintiff"), by and through her undersigned attorneys, hereby complains of

Defendants as follows:

## PARTIES, JURISDICTION & VENUE

        1.      This is a civil action for damages arising out of the interstate transportation of goods

which resulted in a fatal truck crash on January 4, 2022 on I-85 near Gaffney in Cherokee County,

South Carolina.

        2.      Plaintiff is domiciled in and a citizen of the State of South Carolina.  Plaintiff is the

duly appointed Personal Representative of the Estate of James Fuelling (the "Decedent") and has

authority to bring this Wrongful Death action on behalf of the Decedent and his beneficiaries under

the South Carolina Wrongful Death Act, S.C. Code Ann. § 15-51-10 *et seq.*, and to bring this

Survival action on behalf of the Estate of the Decedent pursuant to S.C. Code Ann. § 15-5-90.

1

3.      Defendant Pratt Industries, Inc. ("Pratt Industries") is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located in the State of Georgia.  Pratt Industries is the world's largest, privately held recycled paper and packaging company.

4.      Defendant Pratt (Jet Corr), Inc. ("Pratt (Jet Corr)") is a corporation organized and existing pursuant to the laws of the State of Georgia with its principal place of business located in the State of Georgia.  Upon information and belief, Pratt (Jet Corr) is a subsidiary or division of Pratt Industries which manufactures, sells, and distributes corrugated packaging materials to the worldwide market.

5.      Defendant Pratt Logistics, LLC ("Pratt Logistics") is a limited liability company organized and existing pursuant to the laws of the State of Delaware with its principal place of business located in the State of Georgia.  Upon information and belief, Pratt Logistics is a subsidiary or division of Pratt Industries; it owns and operates a motor carrier authorized by the Federal Motor Carrier Safety Administration (FMCSA) consisting of a fleet of approximately 508 commercial motor vehicles; and it transports goods across more than thirty million (30,000,000) miles on American roadways each year for various Pratt entities.

6.      Collectively, the foregoing Pratt entities—under the direction and control of Pratt Industries—own and operate a comprehensive, integrated, end-to-end manufacturing, transportation, and distribution network for their goods in the United States.

7.      Defendant Echo Global Logistics, Inc. ("Echo") is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located in the State of Illinois.  Echo is a leading provider of technology enabled transportation and supply

2

chain management services that works with shipper and motor carrier clients to transport goods across the United States by accepting and reassigning loads to sub-contracted motor carriers.

8. Defendant S&J Logistics, LLC ("S&J Logistics") is a limited liability company organized and existing pursuant to the laws of the State of Connecticut with its principal place of business located in the State of Connecticut.

9. Defendant Jason Ricardo Gordon ("Gordon") is domiciled in and a citizen and resident of the State of Georgia.

10. The Court has specific personal jurisdiction over Plaintiff and Gordon as the Decedent and Gordon were operating motor vehicles in this District at the time of the collision.

11. The Court has specific personal jurisdiction over Pratt Industries, Pratt (Jet Corr), Pratt Logistics, Echo, and S&J Logistics as they each purposefully availed themselves of the privilege of conducting business and other activities in this District, specifically in that they each statutorily employed Gordon and/or contracted to arrange the transport of goods through this District and were actively engaged in business directly related to the collision such that they should have foreseen the possibility of litigation in the state through which they had arranged for the shipment of goods.

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity among the parties and Plaintiff's damages exceed Seventy-Five Thousand and 00/100 Dollars ($75,000.000), exclusive of interest and costs.

13. Pursuant to 28 U.S.C §1332(b) and Local Civil Rule 3.01(A)(1), venue is proper in the Spartanburg Division because the most substantial part of the acts and omissions giving rise to this claim occurred in Cherokee County, South Carolina.

## FACTS

### *The Logistics Chain Leading to the Crash*

14.    Sometime before January 3, 2022, Pratt Industries and/or Pratt (Jet Corr) manufactured a shipment of corrugated cardboard materials that it desired to ship from its manufacturing facility in Conyers, Georgia to a Pratt Retails Specialties, LLC ("Pratt Retail")[1] facility in East Greenville, Pennsylvania.

15.    On or about January 3, 2022, Defendants Pratt Industries and/or Pratt (Jet Corr) contacted Pratt Logistics—Pratt Industries' logistics division and an authorized motor carrier under the FMCSA—to handle the shipment from Pratt (Jet Corr) to Pratt Retail.  Upon information and belief, Pratt Logistics agreed to handle the shipment.

16.    However, rather than using one of its own 500+ trucks (or one of Pratt Industries' 100+ trucks) to transport these goods—which it was authorized to transport—Pratt Logistics instead "sold the load" the Echo.

17.    Upon information and belief, Echo accepted the load and agreed to arrange for its transport to the Pratt Retail facility in East Greenville, Pennsylvania.

18.    The bill of lading and numerous other shipping documents governing this load reference that it would be shipped via "Echo" or "CC Echo" and that Echo would be the motor carrier.

---

[1] Pratt Retail, the receiver entity, is not a Defendant in this action.  Upon information and belief, it is another subsidiary or division of Pratt Industries.  According to Pratt Industries' website, Pratt Retail "is a Pratt Industries company that offers one-stop shopping for in-store retail programs and innovative, simple online custom packaging solutions for businesses of all sizes."  *See* https://specialty.prattindustries.com/ (last accessed Nov. 10, 2022).



**Bill of Lading noting "CC Echo" as the Carrier**



**Pratt (Jet Corr) Invoice noting "CC Echo" as the Carrier"**



**Pratt Industries' Rate Confirmation Noting "Echo Global" as the Carrier**



**Pratt Industries' Post-Crash Loss Claim Form Noting "Echo" as the Carrier**



**Pratt Industries' Post-Crash Supplier Complaint Form Noting "Echo" as the Carrier**

6

19.     S&J Logistics is not named or listed anywhere on the bill of lading, invoice, or rate confirmation for this shipment.

20.     After accepting the load from Pratt Logistics on January 3, 2022, Echo then selected and subcontracted the load out to S&J Logistics for physical transportation of the goods.

21.     According to Echo's public filings with the Securities and Exchange Commission, once a sub-contracted motor carrier is selected by Echo, Echo "manage[s] all aspects of the shipping process."[2]  Echo then generates profits on the difference between what it charges to its shipper or motor carrier clients (here, Pratt (Jet Corr) and Pratt Logistics) and what it pays to its sub-contracted motor carriers (here, S&J Logistics).

22.     In this case, Echo accepted the load from Pratt Logistics for $3,700 and re-sold the load to S&J Logistics for $3,200, generating a profit to Echo of $500.

23.     Echo touts that it uses its quality program to carefully select carriers and that it continuously collects information about sub-contracted motor carriers in its network regarding reliability, quality control standards, and to ensure that each carrier has an adequate safety rating.

24.     Further, when a carrier has an unrated safety rating or no safety rating, industry standards and best practices require that a third-party logistics company, like Echo, perform additional due diligence to verify that the selected motor carrier is safe, reputable, and has systems in place for compliance with all FMCSA regulations.

25.     However, at the time Echo selected S&J Logistics to transport this load, S&J Logistics did not have a FMCSA safety rating, quality control standards, or indicia of reliability.

---

[2] *See* Echo Global Logistics, Inc. Sept. 25, 2009 initial public offering (available at: https://www.sec.gov/Archives/edgar/data/1426945/000104746909008555/a2185674zs-1a.htmt) (last accessed Nov. 10, 2022).

26.     Had Echo investigated further, it would have learned that S&J Logistics had been an authorized motor carrier with the FMCSA for less than twelve (12) months; had no safety rating with the FMCSA; had only three commercial trucks; had an "out-of-service" violation history above twenty-two percent (22%); had no driver training program as required by the FMCSA; had no policies, procedures, or programs in place for safety, quality control, vehicle maintenance, or other requirements under the FMCSA; and the S&J Logistics' driver (and co-owner) with whom Echo communicated and contracted—Gordon—had just graduated from commercial truck driving school less than two years earlier and had been submitting falsified and/or inaccurate driver logs to S&J Logistics.

### *Loading of the S&J Logistics Trailer on January 3, 2022 and Control by Pratt Industries and/or Pratt (Jet Corr)*

27.     Upon information and belief, on the evening of January 3, 2022, Gordon, acting as an agent, servant, and/or employee of S&J Logistics arrived at the Pratt Industries and/or Pratt (Jet Corr) facility in Conyers, Georgia to pick up the load.

28.     Upon information and belief, Pratt Industries and/or Pratt (Jet) Corr, by and through its agents, servants, and/or employees, exercised control over the loading of the corrugated cardboard goods into S&J Logistics' trailer, then sealed and locked the trailer so that the load it could not be accessed by Gordon or anyone else without the express permission from the shipper, Pratt Industries and/or Pratt (Jet Corr).

29.     The FMCSA regulations specify the essential functions and operative details of a carrier's and driver's responsibilities in hauling freight.  Specifically, under 49 C.F.R. § 392.9, a driver must ensure his load is "properly distributed and adequately secured."  This section requires that the driver (1) assure his load meets those requirements before starting his trip and (2) then

8

inspect his cargo and securing devices within the first 50 miles and then every three trip-hours or when his vehicle has been driven 150 miles, whichever comes first.  49 C.F.R. §392.9(b)(1), (2).

30.    However, that same regulation also allows shippers to assume, and thus take control over, the carrier's inspection duties during transportation of the load by ordering the driver not to open his trailer to inspect it, or by loading the trailer in a manner that makes driver inspection impracticable.  49 C.F.R. §392.9(b)(4).

31.    By exercising control over the load pursuant to 49 C.F.R. § 392.9(b)(4) and assuming these essential functions over the details of transport of the load, Pratt Industries and/or Pratt (JetCorr) had the right to and actually did control essential aspects of S&J Logistics' work.

32.    Furthermore, Pratt Industries and/or Pratt (Jet Corr) exercised control over the load and its transportation by communicating special instructions and/or requirements to Echo and S&J Logistics, including instructions concerning driver time and on-duty hours, pick-up and delivery deadlines, and required equipment.

### The Fatal Crash on January 4, 2022

33.    On January 4, 2022, the Decedent, James Fuelling, was a front-seat passenger in a 2015 Toyota pick-up truck being operated by his co-worker, Michael Geese ("Geese"), in the northbound lanes on Interstate 85 in Cherokee County, South Carolina.  Both men were on the job working for Burgess Sales & Supply, Inc.

34.    At approximately 4:00 p.m., near mile marker 98 on I-85, Geese approached heavy traffic in a construction zone and safely slowed down or stopped because of the traffic conditions.

35.    At the same time, Gordon was operating S&J Logistics' tractor-trailer and driving in the same direction on I-85, but some distance behind Geese's vehicle and the backed-up traffic.

Prior to encountering the heavy traffic, Gordon was driving aggressively, erratically, and above the posted speed limited as confirmed by eyewitnesses and black box data from his tractor-trailer.

36.     Due to his inattention and reckless driving, rather than safely bringing his tractor-trailer to a stop (or slowing) in accordance with the traffic conditions, Gordon rear-ended Geese's vehicle and then crashed into several more vehicles, causing a massive collision.

37.     Gordon claims to have applied his tractor-trailer's brakes for approximately four hundred (400) yards—or one thousand, two hundred (1200) feet—prior to impact, but was apparently still unable to stop his tractor-trailer and avoid the collision.  The black box data from his tractor-trailer confirms this is inaccurate.

38.     As a result of the crash, Decedent suffered great physical harm, pain and suffering, and injuries, and ultimately died on scene.

39.     At all times relevant hereto, Geese and the Decedent acted in a safe, prudent, and reasonable manner and in in no way contributed to the Decedent's injuries and death.

### *Agency/Joint Venture/Employment by and between Defendants*

40.     At all times relevant hereto, Gordon was a Class A licensed motor vehicle operator. Accordingly, Gordon was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers including, without limitation, South Carolina statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

41.     At all times relevant hereto, Pratt Logistics, Echo, and S&J Logistics were or should have been authorized interstate motor carriers and/or brokers authorized to transport or arrange for

10

transport of goods in interstate commerce and in the State of South Carolina pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the USDOT.

42.     Accordingly, Pratt Logistics, Echo, and S&J Logistics each were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified motor carriers and/or commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, South Carolina statutes governing motor vehicles and the FMCSR set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

43.     At all times relevant hereto, Pratt Industries and/or Pratt (Jet Corr) exercised control over the loading of the trailer and Gordon's access to same, as well as special instructions and/or requirements related to his transportation of the load, thus having authority and exercising control over the manner in which the load was to be transported, and each was obligated to exercise such control in a reasonable manner in compliance with applicable laws, regulations, and industry standards.

44.     At all times relevant hereto, Pratt Logistics, Echo, and S&J Logistics each arranged and/or offered to arrange the transportation of the subject load being hauled by Gordon at the time of the collision which they were authorized to transport and which they accepted and legally bound themselves to transport.

45.     At all times relevant hereto, Gordon was the agent, servant, and/or employee of Pratt Industries, Pratt (Jet Corr), Pratt Logistics, Echo, and S&J Logistics and was acting in the course and scope of his employment and under the direction, control, and authority of these Defendants.

46.    At all times relevant hereto, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution.

47.    At all times relevant hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

48.    At all times relevant hereto, Pratt Industries, Pratt (Jet Corr), Pratt Logistics, Echo, and S&J Logistics possessed the right and power to direct and control Gordon in the performance of the work and in the manner in which the work was to be performed.

49.    By operation of law, Gordon was the actual and/or statutory employee and/or agent of Pratt Industries, Pratt (Jet Corr), Pratt Logistics, Echo, and S&J Logistics.

50.    Defendant Pratt Industries, Pratt (Jet Corr), Pratt Logistics, Echo, and S&J Logistics are liable for the negligent acts or omissions of Defendant Gordon under the common law theories of respondeat superior, agency, master/servant liability, and vicarious liability.

### *Pratt Logistics and Echo Functioned as Motor Carriers*

51.    The definition of "carrier" includes "motor carriers," which are defined as "person[s] providing motor vehicle transportation for compensation." 49 U.S.C. § 13102 (3), (14).

52.    The term "transportation" is defined as including "services related to" (including "arranging for") the movement of property. *See* 49 U.S.C. § 13102 (23).

53.    This statutory text confirms that being a motor carrier entails more than just physically picking up shipments and transferring them to a different location. *See* 49 U.S.C. § 13102(3), (14); *Tryg Insurance v. C.H. Robinson Worldwide, Inc.*, 767 Fed. App'x 284 (3d Cir. 2019).

54.    Accordingly, the definition of "carrier" encompasses entities, like Pratt Logistics and Echo, that perform services other than physical transportation.

55.     In determining whether a party is acting as a carrier or a broker, the crucial inquiry is whether a party has legally bound itself to transport goods by accepting responsibility for ensuring delivery of the goods.  *See* 49 C.F.R. § 371.2.  ("Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."); *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1301 (11th Cir. 2018).

56.     At all relevant times Pratt Logistics, and Echo functioned as motor carriers with respect to this load.

### <u>FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS</u>
*(Negligence/Recklessness, Negligence Per Se, Vicarious Liability)*

57.     Plaintiff realleges the foregoing paragraphs as if set forth fully herein.

58.     Gordon owed a duty to Plaintiff and the Decedent to operate his tractor-trailer in a safe and reasonable manner, and in accordance with state and federal law.

59.     Gordon breached his duty to use due care or even slight care in operating his tractor-trailer, and he was negligent, negligent *per se*, grossly negligent, reckless, willful, and wanton in numerous particulars, including but not limited to:

    a.   failing to maintain proper control of his vehicle;

    b.   failing to keep a proper lookout;

    c.   driving while inattentive or distracted;

    d.   failing to properly apply brakes;

    e.   driving at an excessive and unreasonable rate of speed under the conditions;

    f.   failing to operate the vehicle in a safe manner;

    g.   failing to undergo a mandatory post-crash drug test;

13

h. acting in violation of applicable state and federal statutes and regulations;

i. acting in violation of FMCSA's regulations and industry standards;

j. failing to use the degree of care and caution that a reasonable and prudent person would have used under the circumstances;

k. failing to properly maintain, inspect, and/or service his tractor-trailer and the component parts; and

l. in such other and further particulars as discovery may reveal.

60. Pratt Logistics, Echo, and S&J Logistics are each vicariously liable for all the acts and omissions of Gordon under the common law theories of *respondeat superior*, agency, master/servant liability, and vicarious liability, as well as the Federal Motor Carrier Safety Regulations.

61. Pratt Industries and/or Pratt (Jet Corr) exercised direction and control and/or the right to direct and control over Gordon, who was operating Defendant S&J Logistics' tractor-trailer as the actual or apparent agent, servant, and/or employee of Defendants Pratt (Jet Corr) and/or Pratt Industries. Accordingly, these Defendants are vicariously liable for all the acts and omissions of Gordon under the common law theories of *respondeat superior*, agency, master/servant liability, and vicarious liability, as well as the Federal Motor Carrier Safety Regulations.

62. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered and will continue to suffer damages.

63. Plaintiff is entitled to an award of all actual, consequential, and incidental damages against Defendants, jointly and severally.

64. Plaintiff is also entitled to an award of punitive damages against Defendants, jointly and severally.

**FOR A SECOND CAUSE OF ACTION AGAINST S&J LOGISTICS**
*(Negligent Hiring, Entrustment, Training, Supervision, Retention)*

65.     Plaintiff realleges the foregoing paragraphs as if set forth fully herein.

66.     S&J Logistics was negligent, negligent *per se*, reckless, willful, and wanton in hiring Gordon and entrusting him to drive its tractor-trailer, in that S&J Logistics knew or should have known that Gordon was too incompetent, unfit, inexperienced, and/or reckless to operate the tractor-trailer, which created an appreciable risk of harm to the public, including the Decedent, James Fuelling.

67.     S&J Logistics was negligent, negligent *per se*, reckless, willful, and wanton in failing to properly train and supervise Gordon, in that S&J Logistics permitted Gordon, who was within its control, to operate the tractor-trailer with actual or constructive knowledge that Gordon posed a danger to the public, including the Decedent, James Fuelling.

68.     S&J Logistics' acts and omissions in hiring, training, and supervising Gordon, and in entrusting him with the tractor-trailer, were a direct and proximate cause of the collision, as well as Plaintiffs' resulting damages.

69.     As a direct and proximate result of the acts and omissions of S&J Logistics, Plaintiff has suffered and will continue to suffer damages.

70.     Plaintiff is entitled to an award of all actual, consequential, and incidental damages against S&J Logistics, jointly and severally.

71.     Plaintiff is also entitled to an award of punitive damages against S&J Logistics, jointly and severally.

## FOR A THIRD CAUSE OF ACTION AGAINST ECHO
### (Negligent Hiring, Entrustment, Training, Supervision, Retention)

72.     Plaintiff realleges the foregoing paragraphs as if set forth fully herein.

73.     Echo had an obligation and duty to hire, select, retain, and supervise motor carriers and drivers who it hires to transport goods.

74.     Echo had a duty to exercise reasonable care and conduct its own due diligence to verify that the selected motor carrier was safe, reputable, and has systems in place for compliance with all FMCSA regulations.

75.     Echo breached its duty by failing to investigate the qualifications of S&J Logistics and Gordon.

76.     Echo also breached its duty by failing to investigate whether S&J Logistics had appropriate (or any) safety and quality control policies in place to ensure compliance with all applicable state and federal laws, regulations, and industry standards.

77.     At all times relevant hereto, the Federal Motor Carrier Safety Act ("FMCSA"), as part of its Safety Management System, maintained a user-friendly website that was available to the public that tracks registration, safety, and compliance of all motor carriers that have a USDOT numbers, like S&J Logistics.  The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means.

78.     At all times relevant hereto, the FMCSA website contained information that should have alerted Echo that S&J Logistics and/or Gordon were unsafe, and Echo was aware of the FMCSA website.  This information includes, but is not limited to, the fact that S&J Logistics (1) had been an authorized motor carrier with the FMCSA for less than twelve (12) months; (2) had

16

no safety rating with the FMCSA; (3) had only three commercial trucks; and (4) had an "out-of-service" violation history above twenty-two percent (22%).

79.     Further, had Echo conducted its own due diligence on S&J Logistics and Gordon, it would have learned that S&J Logistics (1) had no driver training program as required by the FMCSA; (2) had no policies, procedures, or programs in place for safety, quality control, vehicle maintenance, or other requirements under the FMCSA; and (3) the S&J Logistics' driver (and co-owner) with whom Echo communicated and contracted—Gordon—had just graduated from commercial truck driving school less than two years earlier and had been submitting falsified and/or inaccurate driver logs to S&J Logistics, among other things.

80.     Despite the fact that Echo knew or should have known of  S&J Logistics and Gordon's lack of training, lack of safety policies and procedures, lack  of quality control measures, incompetence, inexperience, out-of-service violations, and falsified driver log history, Echo negligently, recklessly, and with conscious disregard for the safety of the driving public hired, selected, and retained S&J Logistics and Gordon to deliver goods to its customers using the subject tractor-trailer.

81.     Additionally, Echo negligently, recklessly, and with conscious disregard for the safety of the driving public failed to provide adequate supervision to S&J Logistics and Gordon and ensure they were aware of and complied with applicable laws, FMCSA regulations, and industry standards with respect to the operation and maintenance of commercial motor vehicles, including the subject tractor-trailer.

82.     As a direct and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Echo, the Decedent experienced severe injuries, conscious pain and suffering, and mental anguish prior to his death.

83.     As a direct and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Echo, the Decedent's beneficiaries, as represented by Plaintiff, have suffered injuries which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damages:

    a.  pecuniary loss;

    b.  mental shock and suffering;

    c.  wounded feelings;

    d.  grief and sorrow;

    e.  loss of companionship; and

    f.  deprivation of use and comfort of the Decedent's society.

84.     Due to the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Echo, Plaintiff is entitled to recover actual and punitive damages as determined by a jury.

## FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (*Wrongful Death*)

85.     Plaintiff realleges the foregoing paragraphs as if set forth fully herein.

86.     As a direct and proximate cause of Defendants' negligence, negligence *per se*, recklessness, willfulness, and/or wantonness as set forth herein, Plaintiff and the statutory beneficiaries of the Decedent have lost the comfort, society, and companionship of the Decedent, have suffered severe and extreme emotional distress, anxiety, grief, and sorrow, and have incurred funeral and burial expenses for which Plaintiff is entitled to recover damages on behalf of the Decedent's statutory beneficiaries against Defendants, jointly and severally.

87.     Plaintiff is entitled to an award of punitive damages against each Defendant for the wrongful death of the Decedent.

## FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (*Survival*)

88.     Plaintiff realleges the foregoing paragraphs as if set forth fully herein.

89.     As a direct and proximate cause of Defendants' negligence, negligence *per se*, recklessness, willfulness, and/or wantonness as set forth herein, Decedent was forced to endure great conscious pain and suffering prior to his death, and Plaintiff is entitled to an award of actual, consequential, and incidental damages against Defendants, jointly and severally, for these survival damages.

WHEREFORE, Plaintiff prays for judgments against Defendants, jointly and severally, for actual, consequential, and incidental damages caused by their acts and omissions; for punitive damages; and for such other and further relief as this Court deems just and proper.

**YARBOROUGH APPLEGATE, LLC**

291 East Bay Street, Floor 2
Charleston, South Carolina 29401
(843) 972-0150 Office
(843) 277-6691 Fax
liam@yarborougapplegate.com
douglas@yarboroughapplegate.com
john@yarboroughapplegate.com

s/ Liam D. Duffy
Liam D. Duffy (Fed ID # 12249)
Douglas E. Jennings (Fed ID # 11348)
John J. Dodds, IV (Fed ID # 12646)

*AND*

**DAVID W. MARTIN LAW GROUP**
David W. Martin (Fed ID # 13673)
108 Springs Street
Fort Mill, SC 29715
(803) 855-1838
david@davidwmartinlaw.com

*Attorneys for Plaintiff*

19

November 17, 2022
Charleston, South Carolina

20