IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Angela Fuelling, *individually and as Personal Representative of the Estate of James Fuelling*, | Case No. 7:22-cv-00905-JDA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| S&J Logistics LLC, Jason Ricardo Gordon, Echo Global Logistics, Inc.,[1] | |
| Defendants. | |
| Echo Global Logistics, Inc., | |
| Cross Claimant, | |
| v. | |
| S&J Logistics LLC, | |
| Cross Defendant. | |

This matter is before the Court on motions for summary judgment [Doc. 165] and to exclude the expert testimony of Thomas M. Corsi [Doc. 164] filed by Defendant Echo Global Logistics, Inc. ("Echo").

Plaintiff filed an Amended Complaint on November 17, 2022, asserting claims of negligence, recklessness, negligence per se, and vicarious liability; wrongful death; and survival as against all Defendants, and negligent hiring, entrustment, training,

---

[1] The caption represents the remaining Defendants in this action. Pratt Industries, Inc.; Pratt (Jet Corr), Inc.; and Pratt Logistics, LLC were dismissed from this matter on November 3, 2023, and April 30, 2024. [Docs. 155; 227.]

supervision, and retention as against Defendant S&J Logistics, LLC ("S&J") and Echo. [Doc. 27 ¶¶ 57–89.] On November 15, 2023, Echo filed a motion for summary judgment on all claims asserted against it [Doc. 165] and a motion to exclude the expert testimony of Plaintiff's expert Mr. Corsi [Doc. 164]. Plaintiff filed responses to each motion [Docs. 191; 192], and Echo filed replies [Docs. 204; 205]. These motions are now ripe for review.

## **BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

This is a wrongful death action arising out of a motor vehicle collision (the "Accident") that occurred on January 4, 2022, in which an 18-wheeler owned by S&J and operated by Defendant Jason Gordon crashed into a pickup truck, resulting in the instant death of passenger James Fuelling ("Decedent"). [Doc. 27 ¶¶ 1, 33, 35, 38; *see generally* Doc. 165-6 at 3–4 (30:1–31:10).]

S&J is a trucking company that operates as a motor carrier under the Federal Motor Carrier Safety Act, 49 U.S.C. 31138 ("FMCSA"). [Doc. 165-3 at 3 (136:1–13), 6–7 (139:18–140:2).] Echo is a national freight brokerage that operates as a middleman between shippers and motor carriers. [*Id*. at 4 (137:5–16).] On January 3, 2022, Echo assigned a load from Defendant Pratt (Jet Corr), Inc. to S&J to transport from Conyers, Georgia, to East Greenville, Pennsylvania (the "Subject Load"). [Docs. 165 at 3 (citing as undisputed Doc. 27 ¶¶ 14, 17), 10 (citing as undisputed Doc. 27 ¶¶ 27–28); 191-11

2

at 6 (27:6–17).] S&J's driver, Gordon, picked up the load on January 3, 2022, and on January 4, 2022, Gordon failed to stop as traffic slowed in a construction zone near Spartanburg, South Carolina, and slammed into the back of a pickup truck in which Decedent was a passenger. [Docs. 165 at 3 (citing as undisputed Doc. 27 ¶¶ 35–36), 10 (citing as undisputed Doc. 27 ¶¶ 27–28); 191-11 at 6 (27:13–15); 191-18 at 2–3 (8:1–9:24).]

Plaintiff alleges that Echo was negligent in selecting S&J as the motor carrier to transport the Subject Load. [Doc. 27 ¶¶ 73–84.][2]

## APPLICABLE LAW

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[2] Plaintiff's other claims for vicarious liability, wrongful death, and survival are also based on Echo's purported negligence, and thus the Court refers to all of the claims against Echo as the "negligence claims."

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id*. at 322. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element

4

essential to his action that he bears the burden of adducing at a trial on the merits. Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 256.

## **DISCUSSION**

Echo moves for summary judgment on all claims asserted against it.  [Doc. 165.] Echo additionally asks this Court to exclude the expert testimony of Mr. Corsi in its consideration of Echo's motion for summary judgment and at trial.  [Doc. 164.]  Based on the analysis below, the Court concludes that Echo's motion for summary judgment should be granted and that its motion to exclude the expert testimony of Mr. Corsi is moot.

**Motion for Summary Judgment**

In its motion for summary judgment, Echo first argues that Plaintiff's negligence claims against Echo, which are all based on state law, are expressly preempted by the Federal Aviation Administration Authorization Act ("FAAAA").  [Doc. 165 at 1, 11–25.] Echo contends that "Congress has . . . expressly preempted state laws related to services of a broker, such as Echo, with respect to the transportation of property" and that "[t]his federal preemption includes common law negligence claims that would have a significant economic effect on broker services."  [*Id*. at 1.]

In response, Plaintiff contends that her claim is not preempted by the FAAAA and that "every one of the six District Courts in the Fourth Circuit to consider the issue has concluded that the FAAAA does not preempt negligence claims against brokers or that the FAAAA's safety exception saves the claims from preemption."  [Doc. 191 at 13–14.]

5

The Court will begin by addressing Echo's arguments that the FAAAA expressly preempts Plaintiff's claims.[3] After considering the parties' arguments and relevant case law, the Court concludes that Plaintiff's negligence claims are expressly preempted by the FAAAA because they fall within the preemption provision of the FAAAA and are not saved by the safety exception of the preemption provision.

Congress enacted the FAAAA in 1994 as part of an effort to deregulate interstate transportation industries. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). After the FAAAA was enacted, Congress turned its attention to the trucking industry upon finding that state regulation of intrastate transportation of property had become "unreasonably burden[some]" to "free trade, interstate commerce, and

---

[3] Plaintiff first argues that the issue of preemption was already decided as a matter of law by the Honorable Henry M. Herlong at a hearing on January 24, 2023, and that this Court should not reconsider that ruling. [Doc. 191 at 11–13.] Plaintiff argues that although "the Court issued a text order rather than a full order denying Echo's motion [to dismiss on the basis of FAAAA preemption], the ruling came after extensive briefing by the parties and an in-person hearing before the Court." [*Id.* at 11 n.5.] The Court finds Plaintiff's argument unavailing. The issue of preemption was before the Court on Echo's motion to dismiss [Doc. 50], and the only transcript of the hearing available to the Court indicates that neither the parties nor Judge Herlong addressed the substantive issues relating to preemption under the FAAAA in this case [*see* Doc. 204-1]. Instead, Judge Herlong stated:

> Defendants have moved to dismiss at this stage pursuant to preemption. The Court has reviewed the arguments on both sides. At this stage the Court denies the motions to dismiss pursuant to preemption and also their motions at this stage to dismiss under the doctrine of the independent contractor. And at this stage I also deny those motions to dismiss. Although, as you know, *any of that can be raised later*.

[*Id.* at 8 (emphasis added).] Additionally, nothing in the Minute Entry following the hearing specifically addresses the viability of Echo's preemption claims. [*See* Doc. 61.] Thus, this Court finds that the preemption issue has not been addressed "as a matter of law" and was properly raised again by Echo in its motion for summary judgment.

American consumers." *Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002). The "general rule" of the FAAAA preemption requirement provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Several exceptions follow, including what has become known as the safety exception in § 14501(c)(2)(A). Under this exception, the express preemption provision in § 14501(c)(1)

> shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

§ 14501(c)(2)(A).

### *Preemption Under § 14501(c)(1)*

The Court must first determine whether Plaintiff's negligence claims fall within § 14501(c)(1)'s express prohibition on the enforcement of state laws "related to [the] price, route, or service" of Echo's broker services "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The phrase "related to" expresses a broad preemptive purpose and embraces any state enforcement actions "having a connection with, or reference to" broker services, whether directly or indirectly. *Rowe,* 552 U.S. at 370 (emphasis and internal quotation marks omitted); *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–

84 (1992) (interpreting the similar preemption provision in the Airline Deregulation Act). However, the United States Supreme Court has "cautioned that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Dan's City Used Cars v. Pelkey,* 569 U.S. 251, 261 (2013) (cleaned up).

The Court concludes, as does every Court of Appeals opinion cited by both parties, that Plaintiff's negligence claims are expressly preempted by § 14501(c)(1). Negligent selection and other tort liability claims relate directly to one of Echo's core services as a broker: arranging for the transportation of property by a motor carrier. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014) (holding that common law tort claims "fall comfortably within the language of" the preemption provision, which, by its terms, applies "to state 'law[s], regulation[s], or other provision[s] having the force and effect of law'" (alterations in original) (quoting 49 U.S.C. § 41713(b)(1))); *see also, e.g.*, *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1020, 1023–25 (9th Cir. 2020) (holding that a claim against a broker for negligent selection of a motor carrier is "related to" broker services as outlined in the FAAAA preemption provision).

### *The Safety Exception*

Plaintiff argues that, even assuming her negligence claims are preempted under § 14501(c)(1), the statute's safety exception applies to save the claims. [Doc. 191 at 19–24.] The Court disagrees.

The authorities are split as to this narrow question of whether the FAAAA preempts a claim against a broker for negligent selection, and the parties agree that there is no binding precedent in this Circuit. [*Compare* Doc. 165 at 18–25 (collecting

8

and analyzing cases) *with* Doc. 191 at 14 & n.12, 19–21 (collecting and analyzing cases).] Echo contends that "[e]very recent federal Court of Appeals and District Court to consider whether the FAAAA preempts a state law claim against a broker for negligent selection of a motor carrier has consistently applied preemption." [Doc. 165 at 12.] Specifically, Echo argues that the "Seventh Circuit, Eleventh Circuit, Northern District of Ohio, and Middle District of Pennsylvania have all held in 2023 that the FAAAA preempts exactly the type of claims raised here." [*Id*. at 12–13 (listing cases).] Conversely, Plaintiff argues that "[e]ven if the FAAAA § 14501(c)(1) applies to broker claims, the overwhelming majority of courts—including every court in the Fourth Circuit to address the issue—conclude that the FAAAA's safety exception saves the claims from preemption in § 14501(c)(2)(A)." [Doc. 191 at 19; *see id*. at 14 n.12 (listing cases), 19–24.]

Echo first directs the Court to *Ye v. GlobalTranz Enterprises, Inc*., 74 F.4th 453 (7th Cir. 2023), a 2023 decision in which the Seventh Circuit held that the FAAAA's express preemption provision in § 14501(c)(1) barred the plaintiff's claim and the safety exception in § 14501(c)(2)(A) did not save the claim. 74 F.4th at 464. In *Ye*, the court reasoned that the plaintiff's claim was expressly preempted by § 14501(c)(1) and was not saved by the safety exception because a common law negligence claim enforced against a broker is not a law that is "with respect to motor vehicles." *Id*. at 458–66. Echo also relies on the Eleventh Circuit's similar decision in *Aspen American Insurance Corporation v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), in which the court

held that the FAAAA preempted state law claims against a broker for negligent selection of a motor carrier and the safety exception did not save the claims. 65 F.4th at 1272.

Conversely, Plaintiff points the Court to the Ninth Circuit's 2020 opinion in *Miller,* in which the court addressed, as a matter of first impression among all Courts of Appeals, the issue of FAAAA preemption as applied to negligence claims against brokers that stem from motor vehicle accidents. 976 F.3d at 1023. In *Miller*, as in *Ye*, the plaintiff sued a broker that had arranged for transportation of goods in a semi-tractor trailer that struck the plaintiff's vehicle and resulted in serious injuries to the plaintiff. *Id*. at 1020. The court held that even though the negligence claim was "related to" broker services and expressly preempted, it was saved from preemption by the safety exception. *Id*. at 1023–25, 1031. In so holding, the court concluded that "the safety regulatory authority of a State" encompasses common-law tort claims and that "negligence claims against brokers, to the extent that they arise out of motor vehicle accidents, have the requisite connection with motor vehicles" to be included in the safety exception. *Id*. at 1026, 1031 (internal quotation marks omitted). Plaintiff further argues that the district courts within the Fourth Circuit have "unanimously found no preemption, either in the first instance or because the claim was saved by the safety exception."[4] [Doc. 191 at 20.]

The Court finds *Ye* and *Aspen* are most instructive on the applicability of the safety exception to state law negligent hiring claims asserted against brokers. Because

---

[4] Plaintiff argues that every district court within the Fourth Circuit has held that negligent selection claims against brokers are not preempted by the FAAAA. [Doc. 191 at 19.] However, Echo's motion for summary judgment was fully briefed by the parties in January 2024, less than one year after *Ye* and *Aspen* were decided, and since that time,

the safety exception precludes the FAAAA from "restrict[ing] the safety regulatory authority of a State with respect to motor vehicles," the applicability of the exception to this case turns on whether a broker's hiring practices are sufficiently within South Carolina's regulatory authority "with respect to motor vehicles."  49 U.S.C. § 14501(c)(2)(A).  The *Ye* court noted in its initial text-based determination that the phrase "with respect to" has been interpreted by the Supreme Court to more narrowly mean "concerns," which "massively limits the scope" of the safety exception.  74 F.4th at 460, 465 (cleaned up) (quoting *Dan's City Used Cars*, 569 U.S. at 261).  The court ultimately concluded that the safety exception requires a "direct link" between a state's law and motor vehicles.  *Id*. at 463–64.  Similarly, the *Aspen* court interpreted the phrase "with respect to motor vehicles" to limit the exception's application to "state laws that have a *direct* relationship to motor vehicles."  65 F.4th at 1271.  Conversely, the *Miller* court interpreted the phrase more broadly, concluding that "with respect to" is "synonymous" with "relating to," and that the safety exception therefore supports

---

there have been several opinions from district courts within the Fourth Circuit that have adopted *Ye*'s reasoning and held that negligent hiring claims against brokers *are* preempted by the FAAAA.  *See Mays v. Uber Freight, LLC*, No. 5:23-cv-00073, 2024 WL 332917, at *4 (W.D.N.C. Jan. 29, 2024) (holding that the safety exception did not apply to the plaintiff's negligence claims against the broker because "the statutory preemption provision applicable to brokers does not have a safety exception"); *PCS Wireless LLC v. RXO Capacity Sols., LLC*, No. 3:23-cv-00572-KDB-SCR, 2024 WL 2981188, at *3 (W.D.N.C. June 13, 2024) (similar); *Starr Indem. & Liab. Co. v. RXO Capacity Sols., LLC*, 3:23-CV-00572-KDB-SCR, 2024 WL 2979728, at *10 (W.D.N.C. May 10, 2024) (granting broker's motion to dismiss and holding that, "consistent with precedent in this District, [the plaintiff's negligence] claims are preempted by the FAAAA" and do not fall under the safety exception); *but see Milne v. Move Freight Trucking, LLC*, No. 7:23-cv-432, 2024 WL 762373, at *7–8 (W.D. Va. Feb. 20, 2024) (surveying relevant case law and holding that "regardless of whether the preemption provision covers [plaintiff]'s negligence claims against [defendants], the safety exclusion shields such claims from preemption.").

11

exempting state laws with either a direct or an indirect link to motor vehicles, including negligent hiring claims against brokers.  976 F.3d at 1030–31.

This Court agrees with the *Ye* court that, given Congress's choice to use "relating to" in the general preemption provision, its use of "with respect to" in the safety exception "implies a different scope."  74 F.4th at 465.  Further, as discussed in *Ye*, brokers are not mentioned in the safety exception, even though Congress explicitly listed broker services in the express preemption provision, which suggests the omission of brokers from the safety exception was intentional.  *Id*. at 460–61; *see Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is . . . inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision."). The *Ye* court conducted a broader analysis of Title 49 and the regulatory landscape and concluded that "[w]here Congress regulates motor vehicle safety in Title 49, it addresses motor vehicle ownership, operation, and maintenance—but not broker services."  74 F.4th at 462; *see id*. at 462–63.[5]

---

[5] The *Ye* court also provided three reasons why its analysis of the safety exception differed from the Ninth Circuit in *Miller*, first asserting that "the Ninth Circuit unduly emphasized Congress's stated deregulatory purpose in passing the Act at the expense of the insights that come from an analysis of the broader statutory scheme."  74 F.4th at 465.  The court also pointed to the Ninth Circuit's reliance on a "presumption against preemption" to resolve any ambiguity regarding the scope of the exception, which has since been rejected by the Ninth Circuit as standing "in direct conflict with the Supreme Court's instruction to 'focus on the plain wording of the clause' instead of 'invok[ing] any presumption against pre-emption.'"  *Id*. (alteration in original and citation omitted); *see R.J. Reynolds Tobacco Co. v. Cnty. of L.A.*, 29 F.4th at 553 n.6 (9th Cir. 2022) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).  Finally, the court also disagreed with the Ninth Circuit's conclusion that the phrase "with respect to" is synonymous with "relating to," and explained that "[o]ur different view of this phrase offers another reason why our construction of the safety exception is narrower than the Ninth Circuit's."  *Ye*, 74 F.4th at 465–66.

Accordingly, rather than adopting the Ninth Circuit's broad construction of the safety exception, this Court adopts the Seventh and Eleventh Circuit's construction of the exception, narrowly construing its application to save only claims that have "a direct relationship to" motor vehicles. Because there is no direct link between motor vehicles and Echo's alleged negligent hiring by failing to properly screen S&J in its capacity as a transportation broker, the Court concludes the safety exception does not save Plaintiff's negligence claims from FAAAA preemption.[6]

**Motion to Exclude Expert Testimony of Professor Thomas M. Corsi**

Echo additionally moves to exclude the expert testimony of Plaintiff's expert Dr. Corsi from the Court's consideration of its motion for summary judgment and from trial. [Doc. 164.]  Specifically, Echo challenges Plaintiff's use of Dr. Corsi's expert opinion testimony to define the alleged standard of care that a broker such as Echo should follow in vetting and selecting a motor carrier to transport a load for a shipper.  [*See id*. at 16–33.]  As discussed above, Echo is entitled to summary judgment on Plaintiff's negligence claims because they are preempted by the FAAAA.  As a result, Echo's motion to exclude is found as moot.

---

[6] Echo also argues in the alternative that Plaintiff's causes of action fail for other reasons.  [Doc. 165 at 25–35.]  Because the Court concludes that Plaintiff's negligence claims are preempted by the FAAAA, it need not reach Echo's alternative arguments. However, the Court notes that Plaintiff does not contest Echo's motion for summary judgment on the issue of survival evidence [Doc. 191 at 1 n.1] where Echo argues that the survival claim should be dismissed because there is no evidence of conscious pain and suffering [Doc. 165 at 30–31].  Additionally, Gordon filed a notice of joinder, joining in Echo's motion for summary judgment with respect to Plaintiff's survival claim.  [Doc. 179.]  Because Plaintiff does not contest that there is no evidence to support a survival claim, this claim is dismissed from the action.

## **CONCLUSION**

For the reasons discussed above, Echo's motion for summary judgment [Doc. 165] is GRANTED, and Echo is DISMISSED as a Defendant from this action and Plaintiff's survival claim is DISMISSED. Additionally, Echo's motion to exclude the expert testimony of Professor Thomas M. Corsi [Doc. 164] is FOUND AS MOOT.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

November 15, 2024
Greenville, South Carolina